IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-0044** |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

**McHUGH, J.**                                                                                                       **February 21, 2025**

## MEMORANDUM

**I.        Relevant Background**

This is a commercial mortgage foreclosure case.  On September 27, 2023, Plaintiff, ICON PSG 1 FL, LLC, loaned $20,500,000 to Defendant, Jenkins Court Realty, L.P., to allow Defendant to refinance and fund construction on a piece of property located at 610 Old York Road, Jenkintown Borough, Pennsylvania ("the Property").  Compl. ¶¶ 1-2, 13, ECF 1.  The loan was memorialized ("the Loan Agreement") and secured by an open-end mortgage on the Property ("the Mortgage").  *Id.* ¶¶ 14-15.

Under the Loan Agreement, Defendant is required to make monthly payments.  *Id.* ¶ 18.  Failure to make any such payment within five days of the due date constitutes an Event of Default, without any notice requirement from Plaintiff.  *Id.* ¶ 19.  As is relevant here, upon a default, the Mortgage expressly authorizes Plaintiff to foreclose on the Property for the full amount owed under the Loan Documents[1] and to appoint a receiver to manage the Property.  *Id.* ¶ 23.  The Loan Agreement also specifies that Plaintiff has no obligation to disburse any funds should Defendant

---

[1] The "Loan Documents" refer collectively to the Loan Agreement, the Mortgage, a secured promissory note executed by Defendant, and several other documents executed in conjunction with the Loan.

fail to comply with the Loan Agreement in any way. *See* Receivership Mot. *Ex*. 1 at § 6.2(b), ECF 5-3 ("Loan Agreement").

On November 20, 2023, Plaintiff assigned the Mortgage to Cross River Bank as collateral. Opp'n. Br. Ex. A, ECF 10-1 ("Collateral Assignment"). The language of the Collateral Assignment Agreement between Plaintiff and Cross River Bank preserves Plaintiff's rights under the Mortgage, including the right to foreclose on and seek receivership for the Property. *Id*.

Starting in November 2024, Defendant failed to make its monthly payment under the Loan Documents. Compl. ¶ 25. Defendant subsequently failed to pay the monthly payments due on December 1, 2024, and January 1, 2025. *Id*. As of the date the Complaint was filed, Defendant had not yet made any of these payments. *Id*. ¶ 29. Defendant's breaches of the Loan Agreement constitute Events of Default. Loan Agreement § 11.1.

Beyond Defendant's failure to make monthly loan payments, the Property and its management are in disarray. Defendant is owned and managed by Philip Pulley. Compl. ¶ 8. In a sworn declaration, Plaintiff's President Ibrahim Sheikh avers that Defendant also failed to pay 2024 property and school taxes, failed to complete the projects contemplated under the Loan, leaving the "[p]roperty garage in a structurally unsafe condition," failed to provide Plaintiff with required financial reporting, and refused to provide Plaintiff with information about an employee involved in the project who was struck by a car. Receivership Mot., ECF 5-2 ("Sheikh Decl."). The Declaration also raises several concerns about Mr. Pulley's ability to manage the property. Specifically, Mr. Pulley represented that he and Defendant were "out of money," two of Pulley's other owned and operated entities suffered partial property collapses, and numerous other entities owned by Pulley have defaulted on their loans in the aggregate amount of over sixty million dollars. *Id.*

On this basis, Plaintiff initiated foreclosure proceedings on January 6, 2025, and moved to appoint Trigild IVL, LLC as receiver on January 10, 2025. Defendant opposes the appointment of a receiver, relying primarily on nonprecedential case law and factual assertions unsupported by the record. For the reasons that follow, I will grant Plaintiff's motion.

## II.   Standard of Review

Federal Rule of Civil Procedure 66 governs "an action in which the appointment of a receiver is sought," and accordingly governs this Motion. This Court's jurisdiction is based on diversity, and multiple Courts of Appeals have interpreted Rule 66 as mandating that district courts sitting in diversity apply federal law with respect to the appointment of a receiver. *See, e.g., Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009); *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).

The Third Circuit has stated that the appointment of a receiver is an "extraordinary" remedy. *Maxwell v. Enterprise Wall Paper Manufacturing Co.*, 131 F.2d 400, 403 (3d Cir. 1942). But district courts are also given "broad discretion in appointing a receiver." *Wilmington Tr. N.A. v. Pavilion Apts. PENN LLC,* No. 22-3985, 2023 WL 18568, at *3 (E.D. Pa. Jan. 13, 2023).

The Third Circuit has not yet endorsed a set of factors that district courts should consider in determining whether to appoint a receiver. Many other district courts within the Third Circuit's jurisdiction have turned to the factors identified by the late Judge Irenas in *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F.Supp.2d 604 (D.N.J. 2012). *See, e.g., Wilmington Tr., Nat. Assoc. v. 1800 16th Street, LLC*, No. 19-02601, 2020 WL 703653 (E.D. Pa., Feb. 11, 2020) (McHugh, J.) (adopting the *CCC Atlantic, LLC* factors). These factors include whether "the property is inadequate security for the loan" and whether "the mortgage contract contains a clause granting

3

the mortgagee the right to a receiver." *CCC Atlantic*, 905 F.Supp.2d at 614. They also include "the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor." *Id.* These factors may be applied in a less stringent manner if a loan agreement expressly allows for the lender to apply for a receiver in the event of a default. *Id.* at 615. For present purposes, in the absence of any controlling authority from the Third Circuit, I will adopt these factors as well.

### III. Discussion

Defendant objects to the appointment of a receiver, primarily relying on two arguments. First, Defendant argues that Plaintiff assigned the Mortgage Instrument to Cross River, and therein forfeited its authority to request appointment of a receiver. Opp'n. Br. at 9. Second, Defendant argues, without any record evidence to support its contention, that Plaintiff was responsible for Defendant's default, leading equitable factors to weigh against appointment of a receiver. *Id.* at 12. Defendant does not dispute any of its alleged noncompliance.

I find Defendant's arguments unpersuasive and unsupported by any sworn evidence, and will therefore grant Plaintiff's motion.

#### A. Plaintiff retains the right to foreclose on the property.

Defendant argues that Plaintiff forfeited its rights to foreclose on the Property and to appoint a receiver when it assigned the Mortgage to Cross River Bank. But an assignment is simply a form of contract, and its terms control. Here, the plain text of the Collateral Assignment between Plaintiff and Cross River Bank explicitly preserves Plaintiff's rights as assignor, including the rights to foreclose on the property and seek the appointment of a receiver: "Assignor shall retain all rights of ownership of the subject Mortgage, and the note secured thereby, including, but

not limited to foreclosing said mortgage for non-payment or for any other default thereunder…". *See* Collateral Assignment. Defendant cites no authority for the proposition that the specific language of an assignment can be ignored, and its position finds no support in common law. *See* 6A C.J.S. Assignments § 97 ("Generally, the intention of the parties ascertained from the entire transaction, including conduct, determines whether the assignment is absolute or only intended as a collateral security."). Plaintiff has therefore retained its right to foreclose on the Property and appoint a receiver.

### B. The facts on the record support appointment of a receiver.

Defendant next argues that Plaintiff bears responsibility for Defendant's non-compliant behavior. Specifically, Defendant's response avers that Plaintiff failed to disburse certain project-related funds to Defendant, hindering its ability to make payments under the Loan Agreement. Without any affidavit or sworn declaration in support, these arguments represent nothing more than assertions by counsel which are not entitled to any weight. *See, e.g. Biberman v. Harrah's Trump Plaza*, No. 85-2375, 1986 WL 4985, at *1 (E.D. Pa. Apr. 28, 1986) ("Plaintiffs did not furnish…an affidavit of the witness; consequently, these facts are not of record."); *Dominic J. v. Wyoming Valley W. High Sch.*, 362 F.Supp.2d 560, 565 (M.D. Pa. 2005) ("Counsel's statements contained in the brief in opposition simply do not constitute evidence.") (emphasis added); *Kupstas-Badurina v. Tuthill Corp.*, No. 23-994, 2025 WL 417340, at *5 (E.D. Pa. Feb. 6, 2025) (McHugh, J.) (limiting analysis to facts supported by the record).

Defendant also contends – again without factual support – that it is in the process of refinancing with Prime Haven Capital, and that such refinancing should stay its obligations under the Loan Agreement. But it points to no language in the Loan Agreement suggesting that an effort to refinance entitles it to forbearance. Plaintiff's right to foreclose was triggered by multiple

instances of non-compliance, and Defendant's *post hoc* effort to find better terms from another lender is irrelevant to the past breaches addressed by the pending motion.

Looking beyond Defendant's conclusory arguments to the record in this case, appointment of a receiver is appropriate under the factors set forth in *CCC Atlantic*.[2] These factors include whether the property is inadequate security for the loan, whether the mortgage contract contains a clause granting the mortgagee the right to a receiver, the continued default of the mortgagor, the probability that foreclosure will be delayed in the future, the unstable financial status of the mortgagor, and the misuse of project funds by the mortgagor. *See CCC Atl., LLC*, 905 F.Supp.2d at 614. Courts in the Third Circuit give particular weight to the presence of a contractual provision authorizing appointment of a receiver. "The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *Id.* at 615; *see also Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *41 (D.N.J. June 27, 2019); *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship*, No. 16-2090, 2017 WL 485958, at *3 (M.D. Pa. Feb. 6, 2017).

Here, the Mortgage Agreement expressly grants Plaintiff the right to appoint a receiver upon the occurrence of any Event of Default. Receivership Mot., Ex. 2, § 7.1(g), ECF 5-4

---

[2] Defendant instead relies upon the *Canada Life* factors. 563 F.3d 837, 844 (9th Cir. 2009). This test is not controlling within the Third Circuit, and, ironically, does not support Defendant's argument, with four of the seven elements weighing in favor of receivership. Those factors are as follows: 1) Plaintiff has a valid claim, 2) the property is in imminent danger of being damaged, based on the condition of the garage described in the Sheikh declaration, and on Defendant's refusal to cooperate in an investigation surrounding a worker injury, 3) Plaintiff will likely prevail in the action because Defendant has defaulted, rendering foreclosure appropriate, and 4) the receivership will protect Plaintiff's interest because Plaintiff proposes a qualified, reputable receiver, as discussed below.

("Mortgage Agreement"). Additionally, Defendant is in a state of continued default and is financially unstable, both by its own admission, and as outlined in Plaintiff's affidavit. Sheikh Decl. In fact, Defendant does not dispute its continued Default or any allegations of noncompliance, trying to focus the Court's attention on Plaintiff's conduct. But even assuming Plaintiff breached its obligation to disburse funds under the Loan Agreement, an allegation entirely unsupported by the record, Defendant did not provide notice of the breach to Plaintiff within 30 days of any alleged noncompliance, a prerequisite to establishing breach under the Agreement.

On balance, the *CCC Atlantic* factors strongly support appointment of a receiver. *CCC Atl., LLC*, 905 F.Supp.2d at 614.

### C. Trigild is an appropriate receiver.

Plaintiff has identified Trigild IVL, LLC ("Trigild") as a receiver for the property. Upon review of Trigild's proposal[3] and other work in like circumstances, I find that Trigild is competent and capable to serve as receiver in this action. *See, e.g., Fannie Mae v. Harrison Ct. Realty Co., L.P., et al.,* No. 24-4722, ECF 18 (E.D. Pa. Oct. 18, 2024) (appointing Trigild as the receiver in the Fannie Mae foreclosure action against Mr. Pulley's properties); *Wilmington Tr., Nat'l Ass'n, as Trustee for the Benefit of the Holders of Natixis Com. Mortg. Sec. Tr. 2018-FL1, Com. Mortg. Passthrough Certificates, Series 2018-FL-1 v. Phila. Ctr. Realty Associates, L.P., et al.,* No. 23083391 (Pa. Com. Pl. Phila. Cnty., Sept. 7, 2023) (approving the appointment of Trigild as receiver for the Wanamaker Building in Philadelphia).

---

[3] Receivership Mot., Ex. 4, ECF 5-6.

**D. Form of Order**

The order proposed by Plaintiff was copied from Judge's Rufe's decision in *Harrison Court Realty Co.,* No. 24-4722 (E.D. Pa. Oct. 18, 2024). That case was brought by Fannie Mae and involved a series of commercial properties, where different considerations apply. The order being entered with this memorandum will not adopt all of the provisions deemed appropriate in that case.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's Motion for Appointment of a Receiver will be granted. An appropriate order follows.

      /s/ Gerald Austin McHugh
      United States District Judge