IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ICON PSG 1 FL, LLC** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 25-44 |
| | : | |
| **JENKINS COURT REALTY CO., L.P.** | : | |

**McHUGH, J.**                                                                                                    **May 2, 2025**

**MEMORANDUM**

**I.      Relevant Background**

This is a commercial foreclosure case, where Defendant has moved to set aside a Default entered by the Clerk. The relevant background is set forth in my previous memorandum appointing a receiver, docketed on February 21, 2025 at ECF 12. *See ICON PSG 1 FL, LLC v. Jenkins Ct. Realty Co., L.P.*, No. 25-44, 2025 WL 589206 (E.D. Pa. Feb. 21, 2025). For present purposes the following facts are relevant.

In September 2023, Plaintiff ICON PSG 1 FL, LLC ("Icon") loaned $20,500,000 to Defendant Jenkins Court Realty Co., L.P., owned by principal Philip Pulley. *See* Receivership Mot., Ex. 1, ECF 5-3 ("Loan Agreement"). Under the Loan Agreement, Defendant's failure to make any monthly payment within five days of its due date constitutes a default. *Id.* §§ 2.3, 11.2.2. Upon default, Plaintiff may foreclose on Defendant's property for the full amount owed. *Id.* § 11.3.1.

The Loan Agreement further provides that Icon has no obligation to disburse any funds should Jenkins Court Realty fail to comply with the Loan Agreement in any way. *Id.* § 6.2(b). If Defendant wanted to establish that Plaintiff had somehow breached the Agreement, Defendant

would first be obligated to provide a notice of breach to the Plaintiff within 30 days of the alleged noncompliance. *Id.* § 15.8.1.

Starting in November 2024, Defendant stopped making monthly payments to Plaintiff. Compl. ¶ 25, ECF 1. Defendant's breach of the Loan Agreement constituted default, triggering Plaintiff's ability to recoup its funds through foreclosure.

Plaintiff commenced its foreclosure action by filing a Complaint in this Court on January 6, and sending the copies of the Complaint, Summons, and Waiver Documents to Defendant's counsel of record, Attorney Michael Yanoff and Goldstein Law Partners, LLC ("the Goldstein Firm"), on January 9. Pl.'s Opp'n. Br. at 5, ECF 24 ("Pl. Opp'n.").[1] On January 10, Plaintiff filed a Motion for Expedited Appointment of a Receiver. ECF 5. On January 13, Attorney Yanoff requested an extension of time for Defendant to file a response to the Receivership Motion due to his then-upcoming travel. *See* ECF 7; Pl. Opp'n., Ex. A, ECF 24-2. Notably, Attorney Yanoff did *not* request an extension of the deadline to file a response to the Complaint, nor did he articulate any reason other than his travel as to why an extension was necessary. Pl. Opp'n. at 5-6. Attorney Yanoff waived service on Defendant's behalf on January 15. ECF 6.

In the weeks that followed, Attorney Shawn M. Rogers of the Goldstein Firm litigated the Receivership Motion on Defendant's behalf. ECF 10. On February 21, I issued a Memorandum granting Plaintiff's Receivership Motion and an accompanying Order appointing Trigild as a receiver. ECFs 12, 13. Immediately following the entry of my Receivership Order, Pulley began sending frequent emails to Trigild regarding the transition of property management. *See* Pl. Opp'n., Ex. B, ECF 24-3. These emails were sent over a six-week period and reflect Pulley's

---

[1] Page numbers reflect pagination designated by the ECF system.

active involvement in the day-to-day operations of the property.  *Id.*  Pulley does not mention any health issues in any of the messages.[2]

Separately, Pulley also remained involved in his other legal proceedings, both civil and criminal.  In the weeks that immediately followed the filing of Plaintiff's Complaint, Pulley and Pulley-controlled defendants made at least twelve separate filings in at least five different proceedings.  Pl. Opp'n. at 9-12.[3]  Many of these filings required that Pulley personally review and sign documents prior to submission.  *Id.*

Despite Pulley's active involvement in his other matters, Defendant never filed a response to the Complaint in this action.  Pl. Opp'n., Ex. 1, ¶ 5, ECF 24-1.  Nor did Attorney Yanoff or any member of the Goldstein Firm request an extension.  *Id.*  As a result, Plaintiff filed a Request for Entry of Default on March 12, 2025, which the Clerk of Court entered on March 13 ("Default"), more than 60 days after Attorney Yanoff's waiver of service.  ECFs 15, 16.

Also on March 13, Defendant's newly retained counsel filed a Motion to Set Aside Default and Permit Answer.  Mot. to Set Aside Default, ECF 17 ("Def.'s Mot.").  Defendant's Motion does not dispute the timeliness of the Default, nor does it allege that Defendant requested an extension at any time.  Rather, the Motion asserts for the first time that Defendant was unable to prepare and file a response to the Complaint during the eight-week period between service and the entry of

---

[2] Trigild alleges that Defendant has failed to turn over several required documents pursuant to the Receiver Order.  ECF 22.  Trigild has filed a Motion to Compel Compliance with the Court's Receiver Order, which is currently pending before me as well.  *Id.*

[3] This Court may take judicial notice of Mr. Pulley's other court proceedings, together with all filings made therein.  Fed. R. Evid. 201; *see Fannie Mae v. Harrison Ct. Realty Co., L.P., et al.*, No. 24-4722 (E.D. Pa.); *Cresheim Valley Realty Co., L.P., et al.*, No. 230701198 (Pa. Com. Pl. Phila. Cnty. Ct.); *Superior Scaffold Services, Inc. v. SBG Mgmt. Services, Inc., et al.,* No. 2025-55 (Pa. Com. Pl. Montgomery Cnty. Ct.); *USA v. Philip C. Pulley*, No. 24-cr-288 (E.D. Pa.); *ICON PSG 1 FL, LLC v. Jenkins Ct. Realty Co., L.P., et al.*, No. C-03-CV-25-000263 (Md. Baltimore Cnty. Cir. Ct.).

Default because Pulley was sick and hospitalized for six of those weeks. *Id.* ¶¶ 3-4. Defendant also asserts four affirmative defenses. Def.'s Proposed Answer at 4, ECF 17-2. Two weeks later, Pulley filed an affidavit, alleging that during the period at issue, he underwent several procedures requiring antibiotics and pain medication, and that his daughter and wife helped him respond to emails while he was unable. ECF 19.

For the reasons that follow, I will deny Defendant's motion.

## II.    Standard of Review

When a defendant returns a waiver of service, it has sixty days following the date of the waiver request to submit an answer. Fed. R. Civ. P. 4(d)(3). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A court, in its discretion, may set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c). In exercising this discretion, the court must consider whether the default was a result of defendant's culpable conduct, whether defendant has a meritorious defense, the "effectiveness of alternative sanctions," and prejudice to the plaintiff. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987) (citations omitted).

## III.    Discussion

The arguments advanced by Plaintiff are persuasive, and I conclude that no good cause exists to set aside the default because Defendant provides no legitimate excuse for its failure to answer, nor does it assert any meritorious defenses.[4]

---

[4] Because the remaining factors weigh strongly against lifting the default, I need not dwell on potential prejudice to the Plaintiff. But I assume that Plaintiff would not be substantially prejudiced, as being forced to litigate a claim on its merits without more does not suffice to establish prejudice. *Choice Hotels Int'l,*

### A.   Defendant does not establish excusable neglect.

When a default is entered due to a party's culpable or willful conduct, rather than the result of excusable neglect, no good cause exists to set aside the default. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). I find that Defendant's failure to respond to the Complaint was willful.

#### 1.   *Defendant was represented by counsel.*

Defendant has been represented by Counsel in this suit since at least mid-January, 2025, when Defendant's counsel waived service. ECF 6. Even if Mr. Pulley were extremely ill, counsel could have responded to the Complaint with minimal involvement from him, or at a minimum sought an extension based on incapacity. But at no point was there any response to the Complaint. Strikingly, the first assertion of incapacity was not raised until *after* Default had already been entered. The failure to respond to the Complaint even as Defendant vigorously contested appointment of a receiver can only be viewed as willful.

#### 2.   *Defendant's alleged incapacity is no excuse.*

Plaintiff has convincingly demonstrated that despite Mr. Pulley's contention that he was too ill to file an answer in the sixty days between service of the waiver request and Default, he zealously litigated not only the receivership here but other matters during that same period. For example, in the relevant period, Pulley and his entities made no fewer than twelve separate filings in five different civil and criminal dockets.[5] Pulley also sent Trigild representatives numerous

---

*Inc. v. Pennave Assocs., Inc.*, 192 F.R.D. 171, 174 (E.D. Pa 2000). Plaintiff does not identify any other potential prejudice, nor is it clear that any would exist based on the record before me.

[5] In one of these filings, Pulley sought permission in a pending criminal matter to travel to the Galapagos Islands and Ecuador in May 2025, further rebutting any inference that Pulley was too sick to assist with filings related to this case. *See USA v. Philip C. Pulley*, No. 24-cr-288, ECF 23 (E.D. Pa.). It would indeed

5

emails about the property management transition, often several times a day. Even if Pulley was intermittently hospitalized and incapacitated, he has nevertheless remained intimately involved in the day-to-day operation of his property, again undercutting the likelihood that he was too ill to respond to the Complaint in the period at issue. Further, although Pulley represents in his affidavit that he was hospitalized and underwent several surgeries and "bedside procedures" requiring pain medication and antibiotics, he does not at any point allege true incapacity that would have hindered his ability to cooperate with his attorney's preparation of a brief answer or request for an extension.

Despite representations about illness, I am not persuaded that Mr. Pulley was unable to help his attorneys submit a short responsive filing as required under the Federal Rules. This is especially so against the backdrop of his active involvement in both the receivership transition in this case and in his other legal proceedings. Defendant fails to establish good cause to vacate the default.

### B. Defendant fails to set forth a meritorious defense.

To establish a meritorious defense, a party must set forth "specific facts beyond simple denials or conclusionary statements." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *Choice Hotels*, 192 F.R.D. at 175; *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995).

Here, Defendant raises four affirmative defenses:

    1. Plaintiff breached its obligations as follows:

        (a) Failure to approve tenants;
        (b) Interference with leasing and construction;
        (c) Failure to approve or fund construction work for the property;

---

be remarkable to be too ill to read and sign a three-page Answer, while simultaneously planning an international vacation.

> (d) Failure to approve sales of property; and,
> (e) Failure to fund draws or fund draws timely.
>
> 2. Plaintiff fails to state a claim for relief.
> 3. Plaintiff's claims are barred by the doctrine of laches and unclean hands.
> 4. Plaintiff has breached the covenant of good faith and fair dealing.

Def.'s Proposed Answer, at 4.

Defendant's second, third, and fourth asserted defenses consist of nothing more than boilerplate language, stated in conclusory terms. To advance a potentially *meritorious* defense, Defendant would need to apply the legal principles asserted to the facts of this case but makes no effort to do so.

Defendant's sole remaining defense, asserted with some degree of detail, was already raised and rejected in my memorandum appointing a receiver. *See ICON PSG 1 FL, LLC*, 2025 WL 589206, at *3-4. Defendant alleges that Plaintiff breached the Loan Agreement for the reasons enumerated above, and thereby hindered Defendant's ability to make payments. But as I previously explained, "[w]ithout any affidavit or sworn declaration in support, these arguments represent nothing more than assertions by counsel which are not entitled to any weight." *Id.* at *3 (citing *Biberman v. Harrah's Trump Plaza*, No. 85-2375, 1986 WL 4985, at *1 (E.D. Pa. Apr. 28, 1986); *Dominic J. v. Wyoming Valley W. High Sch.*, 362 F.Supp.2d 560, 565 (M.D. Pa. 2005); *Kupstas-Badurina v. Tuthill Corp.*, No. 23-994, 2025 WL 417340, at *4 (E.D. Pa. Feb. 6, 2025) (McHugh, J.) (limiting analysis to facts supported by the record)).

If Plaintiff nevertheless *did* behave as Defendant alleges, there are no facts asserted to show that Defendant sent Plaintiff a notice of breach within thirty days of alleged noncompliance, a prerequisite for Defendant to establish breach under the Loan Agreement. *See id.* at *4. Thus, even if there were a factual basis for the purported defense it would fail as a matter of law. Because

7

Defendant merely attempts to resurrect an argument already rejected, it fails to assert a potentially meritorious defense.

### C.    No alternative relief would be appropriate.

Plaintiff has stated a case compelling enough to warrant the appointment of a receiver. Substantial evidence supports the existence of a breach and risk to the property. No purpose is served by vacating a default where no meritorious defenses exist, and where no underlying facts are likely to emerge supporting a potential defense. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195 ("there would be no point in setting aside the default judgment" if the defendant "could not demonstrate the possibility of his winning"); *Cf. Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.*, 940 F.Supp. 115, 121 (E.D. Pa. 1996) (vacating default, conditional upon the development of facts supporting a meritorious defense within a designated time period). Setting aside default here would only multiply costly litigation, rendering alternative relief inappropriate.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Set Aside Default and Permit Answer will be denied. An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge